Ronald ROMPILLA I

v.

Warden Flormont NERO, Deputy Warden
Fred Williams and Chief Security
Officer Robert Manlin.

Civ. A. No. 75–3525.

United States District Court,
E. D. Pennsylvania.

March 30, 1978.

Indigent Prisoner Litigation Program, Philadelphia, Pa., for plaintiff.

James J. McConnell, Allentown, Pa., for Warden & Dep. Warden.

Charles J. Fonzone, Allentown, Pa., for Manlin.

## MEMORANDUM

BECHTLE, District Judge.

Plaintiff Ronald Rompilla I ("Rompilla") brought this action pursuant to 42 U.S.C. § 1983 against defendants Flormont Nero ("Nero"), Warden of Lehigh County Prison; Fred Williams ("Williams"), Deputy Warden of Lehigh County Prison; and Robert Manlin ("Manlin"), Chief Security Officer of Lehigh County Prison. The primary allegation of Rompilla's complaint is that the defendants incarcerated him in punitive segregation under conditions which violated his rights under the First, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343.[1]

---

1. The Court notes that, while the plaintiff also invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1331 "for an action arising under the Constitution of the United States," no action based directly under the Constitution of the United States has been pleaded. *See Gagliardi v. Flint*, 564 F.2d 112 (3d Cir. 1977).

Presently before the Court is Rompilla's motion for summary judgment, pursuant to Fed.R.Civ.P. 56, on the issue of whether the defendants' failure to provide Rompilla with notice and a hearing prior to, or subsequent to, placing him in disciplinary segregation deprived him of the procedural due process rights guaranteed to him by the Fourteenth Amendment to the Constitution of the United States.[2] For the reasons stated below, Rompilla's motion will be granted in part and denied in part.

In support of his Fed.R.Civ.P. 56 motion, Rompilla relies upon the exhibits accompanying his motion, defendants' answers to the amended complaint, depositions, answers to interrogatories and admissions on file. This supporting material, as correlated in Rompilla's motion, discloses the following undisputed facts:

1. At all times relevant to this suit, defendant Nero was Warden and defendant Williams was Deputy Warden of Lehigh County Prison. As such, they were responsible for supervising junior personnel and inmates and administering prison operations. *See* Defendants' Answer numbers 4 and 5 to the Amended Complaint; Defendants Nero's and Williams' Answer number 2 to Plaintiff's First Set of Interrogatories; Defendants' Admission numbers 1–2; Ex. A, B and C.

2. At all times relevant to this suit, defendant Manlin was Chief Security Officer at Lehigh County Prison and was responsible for supervising junior correctional personnel and disciplining inmates. *See* Defendants' Answer number 6 to the Amended Complaint; Defendants' Admission number 3; Ex. C and D.

3. At all times relevant to this suit, plaintiff was a prison inmate at Lehigh County Prison. *See* Defendants' Answer number 3 to the Amended Complaint; Defendants' Admission number 7; Ex. C, L and M.

4. On September 19, 1975, plaintiff escaped from Lehigh County Prison after obtaining a key to the outside from a tilesetter working in the Work Release Quarters. *See* Defendants' Answer number 8 to the Amended Complaint; Ex. A, B, C and E.

5. On September 22, 1975, at approximately 1:30 a. m., plaintiff was apprehended by officers of the Allentown Police Department and returned to Lehigh County Prison. *See* Defendants' Answer number 9 to the Amended Complaint; Defendants Nero's and Williams' Answer numbers 18–20 to Plaintiff's First Set of Interrogatories; Ex. C.

6. On September 22, 1975, at approximately 2:05 a. m., plaintiff was placed in punitive segregation. *See* Defendants' Answer number 9 to the Amended Complaint; Defendants Nero's and Williams' Answer number 27 to Plaintiff's First Set of Interrogatories; Defendants' Admission numbers 9–10; Ex. A, F, G, H, I, J and K.

7. Defendants were the officials who "decided to place plaintiff in punitive isolation." *See* Defendants' Answer number 10 to the Amended Complaint; Defendants' Admission numbers 19–24; Ex. A.

8. The administrative procedure used to place plaintiff in punitive segregation was the filing of a disciplinary report. *See* Defendants Nero's and Williams' Answer number 27 to Plaintiff's First Set of Interrogatories; Ex. A.

9. Prior to being segregated, plaintiff did not receive written notice of the charges or accusations against him which were considered in the determination to place him in punitive segregation. *See* Defendants Nero's and Williams' Answer number 28 to Plaintiff's First Set of Interrogatories; Defendants' Admission numbers 11–12.

10. Plaintiff did not receive a hearing concerning his punitive segregation prior, during, or subsequent to segregation. *See* Defendants' Answer numbers 11 and 13 to the Amended Complaint; Defendants Nero's and Williams' Answer numbers 30 and 32 to Plaintiff's First Set of Interroga-

2. The Court notes that Rompilla's Fed.R.Civ.P. 56 motion does not address the remaining allegations of his complaint and, therefore, those allegations must be preserved for trial.

tories; Defendants' Admission numbers 13–17.

11. Plaintiff remained in punitive segregation until October 9, 1975. *See* Defendants' Answer number 12 to the Amended Complaint; Defendants' Admission numbers 70 and 98; Ex. L and M.

Rompilla has clearly established that he was not given written notice, a hearing or a written statement of facts supporting the disciplinary action taken, either prior to or subsequent to being placed in disciplinary segregation. The issue before us, therefore, is whether *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), requires written notice, a hearing or a written statement of facts under the circumstances of this case.

In *Wolff v. McDonnell, supra,* the Supreme Court held that, before a prison inmate could be disciplined on charges of serious misconduct, minimum due process required that the inmate be provided with advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 563, 94 S.Ct. 2963. These rights were deemed to be the minimum required, because advance written notice was necessary to inform the inmate of the charges against him and to permit him to prepare a defense, *Id.* at 564, 94 S.Ct. 2963, while a written statement of facts was deemed necessary in order to, *inter alia,* insure the fairness of the proceedings, *Id.* at 565, 94 S.Ct. 2963. However, weighing procedural due process rights against the needs and objectives of the institution, the Supreme Court also said that:

"... the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566, 94 S.Ct. at 2979.

Further, the Supreme Court held that confrontation, cross-examination and the presence of counsel were not required at disciplinary hearings because of the "greater hazards to institutional interests" inherent in those procedures. *Id.* at 567–570, 94 S.Ct. 2963. Thus, written notice, a hearing and a written statement of facts were held to be the minimally required procedural safeguards of an inmate's due process rights, while the granting of other procedural safeguards was left to the sound discretion of prison officials because of the weight of institutional interests. *Id.* at 569, 94 S.Ct. 2963. *See also Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Baxter v. Palmigiano,* 425 U.S. 308, 321, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1971); *cf. Wright v. Enomoto* (N.D.Cal. 1976), *aff'd,* —— U.S. ——, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978).

Based upon the Supreme Court's concern with the need to balance the interests of the institution against the rights of the inmate, we find that *Wolff v. McDonnell, supra,* is distinguishable from the case before us. In *Wolff,* there was no threat of a serious prison security breach. In the instant case, it is undisputed that Rompilla escaped from prison, was captured and returned to the prison, and was immediately placed in disciplinary segregation, where he remained for eighteen days. These facts, primarily that of Rompilla's escape, justify the decision of the defendants to place the security needs of the institution over Rompilla's due process rights. However, once the security interests of the institution were secured, Rompilla's constitutional rights outweighed the interests of the institution, and the defendants were obligated to provide Rompilla with the minimum procedural safeguards enunciated in *Wolff v. McDonnell, supra.* We hold, therefore, that, under the circumstances of this case, the defendants did not deprive Rompilla of procedural due process rights guaranteed to him by the Fourteenth Amendment when they failed to provide him with written notice, a hearing and a written statement of facts prior to placing him in disciplinary segregation. We hold, however, that the defendants did deprive Rompilla of procedural due process rights guaranteed to him by the Fourteenth Amendment when they failed to provide

him with written notice, a hearing and a written statement of facts shortly after, or during, his incarceration in disciplinary segregation.[3]

Rompilla's motion for summary judgment, pursuant to Fed.R.Civ.P. 56 will, therefore, be granted in part and denied in part.

An appropriate Order will be entered.

---

**3.** The Court notes that our holding reaches only the issue of the *minimum* due Rompilla under the circumstances of this case and is in no way intended to relieve prison officials of the obligation to provide the maximum procedural safeguards required or feasible under the circumstances.