# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lee Boozer, : 
                 Petitioner :

v. : No. 17 M.D. 2023
: Submitted: September 9, 2024

Superintendent Lonnie Oliver, Officer :
Baumbeer, Unit Manager-Santos, the :
several other c/o's all included in the :
physical assault and destruction of :
Petitioner's Personal Property on the :
day of 7/7/22 (all are employed at SCI- :
Albion), :
                 Respondents :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**        **FILED: October 17, 2024**

Before this Court is Lee Boozer's (Petitioner), pro se, Petition for Review (Petition) filed in this Court's original jurisdiction arguing that Respondents[1] deprived Petitioner of his property without due process of law and Respondents' preliminary objections (POs) thereto arguing that this Court does not have jurisdiction and demurring to Petitioner's due process claim. However, our review discloses that none of the Respondents have state-wide policymaking functions, and do not qualify as officers of the Commonwealth for purposes of the Commonwealth

---

[1] The named Respondents in this matter are Superintendent Lonnie Oliver, Corrections Officer (CO) Baumbeer, Unit Manager Santos, and other COs that were involved in a physical altercation involving Petitioner and CO Baumbeer on July 7, 2022, and the destruction of Petitioner's property.

Court's original jurisdiction. This Court, therefore, lacks jurisdiction over the Petition and we will transfer the Petition to the Court of Common Pleas of Erie County in accordance with the following opinion.

## I. THE FILINGS

### A. *Petition*

Petitioner is an inmate incarcerated at the State Correctional Institution (SCI) at Forest, but the following issues arose while Petitioner was incarcerated at SCI-Albion. (Petition at 13.)[2] Petitioner alleges that there was an incident where he, "while handcuffed[,] was brutally assaulted by at least [four to five] c[orrections officers (COs)] on [July 7, 2022], after an altercation with [CO] Baumbeer[.]" (*Id.* at 2.) Petitioner avers that CO Baumbeer "had a history of harassing Petitioner due to the numerous complaints" Petitioner verbally made to Unit Manager Santos and Superintendent Lonnie Oliver. (*Id.* at 4.) Petitioner alleges that while exiting the "C-Block" along with other inmates, CO Baumbeer singled out Petitioner and asked "where the f. . . do you think you are going?" (*Id.* at 5.) Petitioner avers he held up a "pass," but CO Baumbeer ordered Petitioner to return to the C-Block. (*Id.*) Petitioner alleges that he became "fearful for [his] safety" because "[CO] Baumbeer got more aggressive," and Petitioner believed CO Baumbeer was going to "hit" him, so Petitioner "defended [him]self" and "a physical altercation occurred . . . ." (*Id.*)

Petitioner avers that "unbeknowing [sic]" to him, "his property in [his] cell [] was also being ransacked and destroyed in retaliation of the (alleged) physical assault of [CO] Baumbeer." (*Id.* at 2.) Petitioner alleges that his "trial transcripts, crime scene photos, appellate briefs, [Post Conviction Relief Act, 42 Pa.C.S.

---

[2] Petitioner has lettered most of his paragraphs in the Petition, but for ease of review, we will cite the page numbers.

§§ 9541-9546,] petition[, and] family photos [] were all ripped up in pieces [and] splashed with 'grape jelly' [and] baby powder[,]" which created "a glue-like substance" that kept the pages of his materials stuck together. (*Id*.) In addition, Petitioner avers that his keyboard, television, and two music tablets were confiscated and destroyed. (*Id*. at 2-3.) Petitioner alleges that he did not know his property was destroyed for 60 days "since [he] was emergency transferred [and] placed in solitary [confinement and] no one brought to [him] a property form notifying [him] that [his] TV [and] stuff wasn't sent with [him] when [he was initially] transferred from [SCI-]Camp Hill to [SCI-]Albion in December 2018," and his property arrived a week later. (*Id*. at 12-13.) Petitioner alleges that after being transferred to solitary confinement and before he was aware that his property was destroyed, he was asked to "sign [a] confiscation form stating (all) of his electronics were broken," which Petitioner refused to sign because none of them were broken when he left his cell earlier that day. (*Id*. at 6.)

Petitioner asserts that the destruction of his legal materials "is an obvious attempt to sabotage any hopes in a successful litigation appeal." (*Id*. at 3.) Petitioner attaches to the Petition a handwritten record of his belongings that he contends were destroyed. Petitioner also avers that he filed grievances in relation to these events, and states that he "hereby appeals the final determination of . . . [including] grievance[ numbers]s 993050, 997903, 998091, 998526, 999959, 1009886, [and] 1012641." (*Id*.) Petitioner explains that his grievances were unsuccessful, and he "was given every excuse possible" including that there was "no jelly on [his] legal materials, [he] never had jelly in [his] property," he did not prove that he owned certain items Petitioner alleges were destroyed, including a music tablet, his

container of baby powder could have opened during transport of his materials, and he did not timely file. (*Id*. at 6-7, 9, 11.)

Petitioner alleges that "the assault upon [his] person and [] the destruction of 'everything' [he] owned . . . without due process of law" violates article I, sections 9 and 26 of the Pennsylvania Constitution, PA. CONST. art. I, §§ 9, 26, and the Fifth Amendment of the United States Constitution, U.S. CONST. amend. V. (*Id*. at 4.) Petitioner seeks "full compensation for (all) electronics, clothing, sneakers, watch, cosmetics, legal materials[, and] family photos" and monetary damages in the amount of $200,000.00. (*Id*. at 3.)

### B. POs

Respondents filed POs arguing that this Court does not have jurisdiction because Petitioner is attempting to appeal the denied grievances and a demurrer as to Petitioner's due process claim. Respondents argue that this Court does not have appellate jurisdiction to review final decisions of inmate grievances by the Department of Corrections' (Department) and, here, the Petition "explicitly asserts that the premise . . . is to obtain review of numerous grievances . . . ." (Preliminary Objections (POs) ¶ 15.) Respondents explain that the Pennsylvania Code provides for the inmate grievance procedure, 37 Pa. Code § 93.9(a), and the Department has implemented this procedure through policy DC-ADM 804. Respondents contend that this Court has held that inmate grievances are a matter of internal prison management over which this Court does not have jurisdiction to review. (*Id*. ¶¶ 19-20.) Accordingly, since Petitioner has explicitly stated that he seeks review of the grievances named in his Petition, Respondents argue that this Court does not have jurisdiction as such decisions are not subject to judicial review.

Respondents also demur to Petitioner's due process claim "to the extent Petitioner's claim could be interpreted as collaterally invoking due process protections[.]" (*Id.* ¶¶ 22-23.) Respondents contend that the Fourteenth Amendment to the United States Constitution, U.S. CONST. amend. XIV, § 1, protects one's right against the deprivation of property without due process of law. (*Id.* ¶ 24.) Respondents argue that Petitioner has not established a due process claim because "[p]ost-deprivation remedies satisfy the due process clause where the situation dictates that the State take immediate action or it is impracticable to provide any meaningful pre-deprivation process." (*Id.* ¶ 26.) Respondents contend that when a prison official negligently or intentionally "confiscates a prisoner's property in an allegedly unauthorized way . . . due process requires only the existence of an adequate post-deprivation remedy because it is not feasible for a prison to provide a hearing prior to taking property that is perceived to be contraband or against prison regulations." (*Id.* ¶ 27.) Respondents argue that this Court has concluded that the Department's grievance system is an adequate post-deprivation remedy, and, since Petitioner filed grievances in relation to the claims herein, the inmate "grievance system provided him with all the process he was due through that approved post-deprivation remedy." (*Id.* ¶¶ 29-30.) Respondents provide the relevant grievances that Petitioner references in the Petition.[3] (*Id.*, Exhibits (Exs.) A-I.) These exhibits

---

[3] Although Petitioner did not append the named grievances to his Petition, this Court may consider the grievances because Petitioner has "averred the existence of" the grievances and has "premised his cause of action upon those documents." *Barndt v. Pa. Dep't of Corr.*, 902 A.2d 589, 591 n.2 (Pa. Cmwlth. 2006). Petitioner also filed a "Response to Respondents['] Preliminary Objections" (Answer) generally denying Respondents' averments and contending that Respondents put forth conclusions of law that do not warrant a response. Petitioner argues that he has exhausted his administrative remedies by filing grievances, but that the grievance process is essentially "unavailable" because the grievance process leads to a "dead-end" because there is consistently no relief granted to inmates. (Answer ¶¶ 18-21.)
.

show that some of the grievances listed in the Petition were related to Petitioner's property claims and were denied for various reasons, including the lack of documentation to allow for proper review, being untimely, and conflicting factual statements by SCI employees. (*See* Exs. D, E, G-I.)

## II. PARTIES' ARGUMENTS

In Respondents' Brief, they reiterate the arguments set forth in their POs. Respondents aver that Petitioner "explicitly" seeks review of his grievances he filed with the Department, and, because this Court may not review inmate appeals of decisions issued by the Department, this Court does not have appellate jurisdiction. (Respondents' Brief (Br.) at 12.) Respondents also contend that, to the extent that Petitioner presents a deprivation of due process argument, this argument has no merit as this Court has concluded that the Department's inmate grievance system provides an adequate post-deprivation remedy.

In Petitioner's Brief, he responds to Respondents' arguments and clarifies some of his own arguments. Petitioner explains that he is **not seeking this Court's review of his denied grievances** and, rather, he is "seeking redress for lost and destroyed property and only offers the grievances and grievance policy and procedure as supporting documents to show proof that all administrative remedies were exhausted." (Petitioner's Br. at 2.) Petitioner explains that before filing a lawsuit, a petitioner must exhaust all administrative remedies available to him, which Petitioner has done here and references his denied grievances as evidence. Notwithstanding, Petitioner argues that a litigant need not exhaust their administrative remedies if they are "unavailable," meaning that the process is a "dead-end" where no relief is provided, or prison officials prevent inmates from utilizing the grievance process through "intimidation" or "misrepresentation." (*Id.*

6

at 2-3 (citing *Ross v. Blake*, 136 S.Ct 1850 (2016)).) Petitioner further asserts that "more than the necessary amount of force was used to subdue" when Petitioner was taken to solitary confinement and that his property was destroyed in an act of retaliation for the alleged assault of CO Baumbeer. (*Id.* at 3.) Petitioner cites the Fourteenth Amendment of the United States Constitution for support that his due process rights were violated. (*Id.* at 4.)

## III.  ANALYSIS

Although Respondents assert the Petition must be dismissed because the Court lacks jurisdiction to consider the claims because they are actually appeals from the denial of Petitioner's grievances, they do not otherwise challenge this Court's jurisdiction.  However, given the Respondents' positions as employees of SCI-Albion, we question our authority to consider the Petition in our original jurisdiction pursuant to Section 761(a)(1) of the Judicial Code.  42 Pa.C.S. § 761(a)(1). "Whether a court has subject matter jurisdiction over an action is a fundamental issue of law which may be raised at any time in the course of the proceedings, including by [the] court sua sponte." *Commonwealth v. Locust Township*, 968 A.2d 1263, 1268-69 (Pa. 2009).

Section 761(a)(1) states that, with some exceptions not applicable here, this Court "shall have original jurisdiction of all civil actions or proceedings:  (1) Against the Commonwealth government, including any officer thereof, acting in his official capacity . . . ." *Id.*  Commonwealth "officers," over whom this Court would have original jurisdiction, are "those persons who perform state-wide policymaking functions and who are charged with the responsibility for independent initiation of administrative policy regarding some sovereign function of state government." *Balshy v. Rank*, 490 A.2d 415, 417 (Pa. 1985).  This Court has held that while

7

superintendents and employees of a single SCI may engage in some policy-making functions, "those functions [are] not state-wide in character, but rather [are] confined geographically," and, therefore, they are not Commonwealth officers for purposes of Section 761(a)(1). *Mickens v. Jeffes*, 453 A.2d 1092, 1093 (Pa. Cmwlth. 1983). *See also Gibson v. Thompson* (Pa. Cmwlth., No. 633 M.D. 2012, filed Dec. 4, 2013);[4] *Jones v. Peterman*, 743 A.2d 537 (Pa. Cmwlth. 1999). Respondents here are identified as the Superintendent of SCI-Albion, a CO and Unit Manager at SCI-Albion, and other unnamed COs at SCI-Albion. "These defendants have no state[-]wide policymaking functions, so do not qualify as officers of the Commonwealth for purposes of the Commonwealth Court's original jurisdiction." *Jones*, 743 A.2d at 538. Therefore, we lack jurisdiction to consider the Petition. However, we will not dismiss the Petition for lack of jurisdiction but transfer it to the Court of Common Pleas of Erie County, which is the common pleas court of the county in which SCI-Albion is located, pursuant to Section 5103(a) of the Judicial Code, 42 Pa.C.S. § 5103(a).[5]

_____

**RENÉE COHN JUBELIRER,** President Judge

---

[4] Pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported opinion of this Court, while not binding, may be cited for its persuasive value.

[5] Section 5103(a) provides, relevantly, that where a

> [m]atter is . . . brought in a court . . . of this Commonwealth which does not have jurisdiction of the . . . matter, the court . . . shall not . . . dismiss the matter, but shall transfer the record thereof to the proper tribunal of this Commonwealth, where the . . . other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal or other matter was first filed in a court or magisterial district of this Commonwealth.

42 Pa.C.S. § 5103(a).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lee Boozer,              :
             Petitioner     :
                          :
          v.               :   No. 17 M.D. 2023
                          :

Superintendent Lonnie Oliver, Officer   :
Baumbeer, Unit Manager-Santos, the    :
several other c/o's all included in the     :
physical assault and destruction of      :
Petitioner's Personal Property on the    :
day of 7/7/22 (all are employed at SCI-  :
Albion),                          :
            Respondents   :

## O R D E R

**NOW**, October 17, 2024, upon concluding that this Court lacks jurisdiction to consider the Petition for Review (Petition) filed by Lee Boozer in its original jurisdiction pursuant to Section 761(a)(1) of the Judicial Code, 42 Pa.C.S. § 761(a)(1), the Petition is transferred to the Court of Common Pleas of Erie County pursuant to Section 5103(a) of the Judicial Code, 42 Pa.C.S. § 5103(a).

_____
**RENÉE COHN JUBELIRER,** President Judge